## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DFS GUAM L.P.,<br><br>Plaintiff,<br><br>v.<br><br>THE A.B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM, AND DOE DEFENDANTS 1-10, INCLUSIVE,<br><br>Defendant. | CIVIL CASE NO. CV 0943-14<br>(Consolidated with<br>CV 0094-15 and CV 0198-15)<br><br>**DECISION AND ORDER ON DEFENDANT ANTONIO B. WON PAT INTERNATIONAL AIRPORT AUTHORITY, GUAM'S MOTION FOR SUMMARY JUDGMENT NO. 1 (FIRST PROTEST)** |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on November 27, 2017, upon Defendant Antonio B. Won Pat International Airport Authority, Guam's Motion for Summary Judgment No. 1 (First Protest). Plaintiff DFS Guam L.P. ("DFS") was represented by Attorneys Maurice Suh, Jay Srinivasan, and Daniel Weiss. Attorneys Kathleen Fisher, Genevieve P. Rapadas, and Sarah Fabian represented Defendant A.B. Won Pat International Airport Authority, Guam ("AIAA").

AIAA's Motion for Summary Judgment No. 1 (First Protest) is the first of three motions for summary judgment filed by AIAA, and the first of four motions for summary judgment heard by the Court. AIAA's Motion for Summary Judgment No. 1 (First Protest) is directed at all the causes of action set forth in DFS' first complaint filed on October 14, 2014 (Complaint

No. 1). In their Motion, AIAA requests that the Court grant summary judgment in its favor on the grounds that: 1) the Court lacks subject matter jurisdiction over DFS' claims concerning success fees; 2) DFS' Protest regarding the Korea trip was untimely; 3) DFS' Protest concerning the anonymous letter designations was untimely; and 4) DFS' claims regarding the automatic stay provision fail as a matter of law, and in the alternative, is moot. DFS counters that AIAA's arguments are either meritless as a matter of law or that they depend upon issues over which there is a genuine dispute of material facts. For the reasons set forth below, the Court DENIES AIAA's Motion for Summary Judgment No. 1 (First Protest).

## BACKGROUND

This case arises from a procurement dispute between DFS and AIAA. On July 19, 2012, AIAA issued RFP No. GIAA010-FY12 ("Procurement") for the specialty retail concession at the airport. Ada Decl. (MSJ 2), ¶ 3. DFS, Lotte Duty Free Guam, LLC ("Lotte"), and two other proposers timely submitted their proposals by the October 17, 2012, submission deadline. Id. at ¶ 4.

On September 26, 2012, the Guam Visitor's Bureau ("GVB") organized a trip to Seoul, South Korea, to celebrate the inaugural flight of the JeJu Airlines return to Guam on September 27, 2012. Id. at ¶ 5. Two members of AIAA's Board of Directors – Francisco Santos and Rosalinda Tolan – joined in the Korea Trip as part of the GVB delegation. Id. at ¶ 5. On September 26, 2012, while on the Korea Trip, the two AIAA board members visited the Lotte department store in Seoul, met with Lotte officials, and received gifts from Lotte. Id., Ex. J at 17. On or about September 28, 2012, DFS employees knew that at least one of the AIAA board members had met with and received gifts from Lotte officials. Rapadas Decl., Ex. 6 at DFS-136743.

On October 30, 2012, DFS sent a letter to AIAA regarding allegations of impropriety surrounding the Korea Trip, which AIAA's Executive Manager, Charles Ada, received on November 7, 2012. Ada Decl., at ¶ 7, Ex. B. AIAA did not respond to this letter. Id., Ex. J at 6; Beighley Decl., at ¶ 5.

On March 28, 2013, AIAA's Supply Management Administrator and AIAA legal counsel Janalynn Cruz Damian met to assign random letter designations to the four proposers. Id. at ¶ 9. Later that day, the AIAA Board conducted a board meeting to discuss the proposals, in which the Board was also informed by AIAA management of the random letter designation voting process. Id. at ¶ 10, Ex. D at 9-10. When the Procurement was presented to the Board, Directors Santos and Tolan withdrew their participation in both the discussion of the Procurement and vote of the proposals. Id., Ex. D at 4. After AIAA's Executive Manager presented the evaluation results and ranking order, the four proposers were identified by their random letter designations. Id. at 4-5. The AIAA Board tabled the matter pending clarification concerning the propriety of the random letter designation process in the Board's approval of the Procurement. Id. at 5. DFS representatives also attended the board meeting. Id. at 9-10.

On March 29, 2013, DFS sent a letter to AIAA seeking clarification regarding the random letter designation process discussed at the board meeting. Id. at ¶ 11, Ex. E. AIAA responded to DFS' email inquiry explaining the random letter designation process on April 5, 2013. Id. at ¶ 12, Ex. F.

On April 11, 2013, DFS sent another letter to AIAA inquiring again into the alleged misconduct throughout the Korea Trip and AIAA's attempts to address DFS' concerns. Id. at ¶ 13, Ex. G. Again, AIAA did not respond to this letter. Beighley Decl., ¶ 7.

On April 12, 2013, the Board held a special meeting in which the Board, using the random letter designation process, approved the Evaluation Committee's recommendation of "Proposer A" as the highest ranked proposer. Ada Decl., Ex. H. The Board approved the award to "Proposer A," which was announced as Lotte, subject to successful negotiations of the Specialty Retail Concession Agreement. Id. During the discussion and vote on the proposals, Directors Santos and Tolan withdrew their participation. Id., Ex. H at 2. DFS representatives were also in attendance at this board meeting. Id. at ¶ 14, Ex. H.

On April 23, 2013, DFS submitted a procurement protest challenging the Procurement and the ranking of Lotte as the most qualified proposer (First Protest). Id. at ¶ 15, Ex. I. Specifically, DFS' First Protest alleged supporting facts mainly concerning 1) the purported

misconduct that took place during the Korea Trip and 2) the alleged impropriety of the random letter designations in selecting the most qualified proposer. Id. DFS demanded that AIAA management stay its negotiations with Lotte pursuant to 5 GCA § 5425(g), and AIAA management and Lotte temporarily stopped their negotiations for the concession contract. Id. at 2; See Request for Judicial Notice ("RJN"), Ex. 1 at ¶¶ 2-5.

On May 17, 2013, AIAA denied DFS' First Protest based on its determination that the protest was filed past the statutory deadline and therefore, could not be considered. Ada Decl., at ¶ 16, Ex. J at 12-13. On May 18, 2013, AIAA management and Lotte resumed contract negotiations for the concession contract, and the Specialty Retail Concession Agreement between AIAA management and Lotte was signed that same day. Id. at ¶¶ 18, 19; RJN Ex. 1 at ¶ 6. On June 11, 2013, the AIAA Board ratified the contract entered into by AIAA management and Lotte, as well as all other actions regarding the Procurement. Ada Decl., Ex. P at 2. On July 21, 2013, Lotte moved in to the airport main concession space. Id., at ¶ 20.

On May 30, 2013, DFS simultaneously filed a civil action in Superior Court Civil Case No. CV 0685-13 and an appeal with the Office of Public Accountability ("OPA") challenging AIAA's award of the specialty retail contract to Lotte based on the reasons set forth in DFS' First Protest. See RJN, Ex. 7, 8. The Superior Court action was dismissed for failure to exhaust administrative remedies on July 19, 2013. See DFS Guam L.P. v. A.B. Won Pat Int'l. Airport Auth., 2014 Guam 12. On October 14, 2014, DFS filed another lawsuit against AIAA and Lotte for the wrongful award of the duty-free concession contract under Superior Court Civil Case No. CV0943-14. The Court consolidated Superior Court Civil Case Nos. CV0094-15, CV0198-15, and CV0943-14, on July 19, 2016.

On April 13, 2017, AIAA filed its Motion for Summary Judgment No. 1 (First Protest) ("MSJ 1"). Plaintiff, DFS filed their opposition on September 29, 2017, and AIAA filed their reply on October 20, 2017. This is the first of three (3) Motions for Summary Judgment filed by AIAA[1]. On November 27, 2017, the Court heard oral arguments from both parties on AIAA's

---

[1] AIAA filed three Motions for Summary Judgment with the Court. Motion for Summary Judgment No. 1 (First Protest) was filed on April 13, 2017, and argued on November 27, 2017. Motion for Summary Judgment No. 2

Motion for Summary Judgement No. 1 (First Protest). The Court then took this matter under advisement.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Guam R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Rule 56(c) of the GRCP further mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U .5. at 322. A genuine issue of material fact exists if there is sufficient evidence which establishes a factual dispute requiring resolution by a fact-finder. Guam Pac Enter., Inc. v. Guam Poresia Corp. et al., 2007 Guam 22 n.8 (citing Iizuka Corp. v. Kawasho Int'l (Guam). Inc., 1997 Guam 10 ¶ 7). The factual dispute must also concern a fact "that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." Id.

If the movant demonstrates a lack of a genuine issue of material fact, "the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." Edwards v. Pacific Fin. Corp. et al., 2000 Guam 27 n. 7 (citations omitted). Thus, the ultimate inquiry for the Court is "whether the 'specific fact' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Bank of Guam v. Flores, 2004 Guam 25 n.7. In determining a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." Id.

AIAA directs its Motion for Summary Judgment No. 1 (First Protest) at all the causes of action set forth in DFS' Complaint No. 1. In their Motion, AIAA requests that the Court grant

(Second Protest) was filed on April 13 2017, and heard over November 28-29, 2017. Motion for Summary Judgment No. 3 (Third Protest) was filed on April 13, 2017, and heard on November 30, 2017.

summary judgment in its favor on the grounds that: 1) the Court lacks subject matter jurisdiction over DFS' claims concerning success fees; 2) DFS' Protest regarding the Korea trip was untimely; 3) DFS' Protest concerning the anonymous letter designations was untimely; and 4) DFS' claims regarding the automatic stay provision fail as a matter of law, and in the alternative, is moot. On the other hand, DFS argues that AIAA's arguments are either meritless as a matter of law or that they depend upon issues over which there is a genuine dispute of material facts.

## I. The Court is granted subject matter jurisdiction pursuant to 5 GCA § 5480(a) over DFS' claims concerning "Success Fees."

Guam's Procurement Law requires that actions brought under § 5480(a) be initiated within fourteen (14) days after the receipt of a final administrative decision. 5 GCA § 5481(a). "Generally, when a statute requires exhaustion of administrative remedies, a party's failure to exhaust deprives the court of subject matter jurisdiction." Barrett-Anderson v. Camacho, 2015 Guam 20 ¶ 32; see also Holmes v. Territorial Land Use Comm'n, 1998 Guam 8 ¶ 9 ("[w]hen an administrative remedy has been provided by statute, this remedy must be exhausted before the courts will act."). Under the Procurement Law, a party that receives an adverse procurement decision may then appeal to the Superior Court of Guam after the exhaustion of administrative remedies before the Public Auditor. See 5 GCA § 5707(a). Such an appeal to the trial court takes the form of a *civil action*. See 5 GCA § 5480(a) (emphasis added); see also Town House Dep't Stores, Inc. v. Dep't of Educ., 2012 Guam 25 ¶¶ 28-29 ("[w]e hold that the term 'action' in 5 GCA § 5480(a) means a 'civil action.'").

AIAA argues that it is entitled to summary judgement because the Court lacks subject matter jurisdiction to hear DFS' Twelfth (12th), Thirteenth (13th), Seventeenth (17th), Eighteenth (18th), and Nineteenth (19th) Causes of Action regarding DFS' allegations that Lotte paid success fees to consultants in violation of 5 GCA § 5631(a). Specifically, AIAA argues that because it is undisputed that DFS never submitted a protest to AIAA regarding the allegations of success fees given to any consultant surrounding the Procurement, DFS failed to first exhaust its administrative remedies required under the Procurement Law before bringing

such claims to the Superior Court. In making this argument, AIAA relies on a Supreme Court decision made in this very dispute which held that DFS could not bring an action in the Superior Court without first submitting a protest and receiving a final administrative decision. See DFS Guam L.P. v. A.B. Won Pat Int'l. Airport Auth., 2014 Guam 12 ¶ 23 (finding that because DFS had failed to exhaust its administrative remedies, the trial court lacked subject matter jurisdiction over those claims). While AIAA is correct, the facts relied on by the Supreme Court in that decision however, are unlike the situation now present before the Court. Further, AIAA argues that not only is that Supreme Court decision controlling law on Guam, it is the law of this case.

The Law of the Case doctrine states that a court is not to reconsider an issue that had already been decided by the same court or a higher court in the same case. Carlson v. Perez, 2007 Guam 6 ¶ 19. If both the issues and facts are identical, the Court must apply the Law of the Case doctrine to the instant motion to ensure consistency. Lujan v. Lujan, 2002 Guam 11 ¶ 7. Absent a showing of clear error, manifest injustice, or an intervening change in law, evidence, or *circumstances*, "failure to apply the doctrine of law of the case . . . constitutes an abuse of discretion." People v. Hualde, 1999 Guam 3 ¶ 13 (emphasis added). The Supreme Court decision relied on by AIAA in the related case, Civil Case No. CV 0685-13, involved circumstances in which the trial court held that it did not have subject matter jurisdiction, and yet addressed the merits of the case in the same decision dismissing the action. See DFS, 2014 Guam 12 ¶ 5. Regarding the issue of subject matter jurisdiction, the Supreme Court upheld the trial court's conclusion that it lacked subject matter jurisdiction over the case because DFS' decision to simultaneously file an appeal with the Office of Public Accountability ("OPA") and a complaint in the Superior Court did not satisfy the exhaustion requirement under the Procurement Law. Id. at ¶ 23. In that case, because the appeal at the OPA was stayed pending adjudication of the civil action and a final decision from the OPA was never obtained, the trial court correctly found that DFS had failed to first exhaust its administrative remedies before the Public Auditor before bringing the action to the Superior Court. Id.; see also See 5 GCA §

5707(a). Upon dismissal of the case in the Superior Court, the stayed procurement appeal before the Public Auditor resumed. Id.

Comparing the situation now before the Court, the Court has determined that the Public Auditor has properly recused herself pursuant to 2 G.A.R. Div. 4 § 12601, and that the matter was consequently dismissed at the OPA.[2] Subsequently, DFS filed its complaint in this matter, Complaint No. 1, on October 14, 2014, which includes those Causes of Action that AIAA argues the Court lacks subject matter jurisdiction to resolve. Nevertheless, in this instant matter where the Public Auditor has properly recused herself, the Court has previously ruled that its jurisdiction is not constrained by the requirement to exhaust administrative remedies. See DFS Guam, L.P., v. The A.B. Won Pat International Aiport Authority, Guam; Lotte Duty Free Guam, LLC, The Territory of Guam, and Doe Defendants 1-10, Inclusive, Civil Case No. 0094-15, *Decision and Order* (June 6, 2016); see also Barret-Anderson, 2015 Guam 20 ¶ 11. Unlike the circumstances in Civil Case No. CV 0685-13, in which DFS' failure to exhaust its administrative remedies resulted in the dismissal of the civil action, DFS reinstated its appeal at the OPA but was subsequently dismissed upon the Public Auditor's recusal, prompting DFS to initiate this civil action now before the Court. Accordingly, the Supreme Court decision in Civil Case No. CV 0685-13 was based on entirely different circumstances then the matter now before the Court. Again, in this case the Court has ruled its jurisdiction is not impaired by reason of failure to exhaust administrative remedies. Thus, because these are two distinct matters, the holding in DFS, 2015 Guam 12, is not the law of *this* case and AIAA's arguments related to the exhaustion requirement no longer apply. See Lujan, 2002 Guam 11 ¶ 7 (emphasis added).

Further, in their reply and at the hearing for oral argument on MSJ #1, AIAA argued that because this case is an appeal from a final administrative decision, the Court's jurisdiction is limited to only the review of AIAA's decision to deny the First Protest and that the Court

---

[2] See DFS Guam, L.P., v. The A.B. Won Pat International Airport Authority, Guam; Lotte Duty Free Guam, LLC, The Territory of Guam, and Doe Defendants 1-10, Inclusive, Civil Case No. 0094-15, *Decision and Order* (Sept. 1, 2015; Sept. 18, 2015; and June 6, 2016) ("the Dismissal Order, as explained by the Response to Writ of Mandate, makes clear that the Public Auditor will not exercise further jurisdiction over the case, that no further relief would be forthcoming to DFS from her office, and that any relief would only be available by an appeal to the Superior Court) (citations omitted).

cannot review anything beyond that scope. Again, AIAA argues that because the allegations of success fees were never raised in connection to any protest submitted to AIAA, the Court does not have subject matter jurisdiction to hear those claims. As stated before, the Court does not find this argument persuasive. See DFS Guam, L.P., v. The A.B. Won Pat International Aiport Authority, Guam; Lotte Duty Free Guam, LLC, The Territory of Guam, and Doe Defendants 1-10, Inclusive, Civil Case No. 0094-15, *Decision and Order* (June 6, 2016).

The Procurement Law makes clear that the Superior Court of Guam "shall have jurisdiction over an action between the Territory and a bidder . . . to determine whether a solicitation or award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation." 5 GCA § 5480(a). Additionally, "[t]he Superior Court shall have such jurisdiction in actions *at law or in equity*, and whether the actions are for monetary damages or for declaratory, or other equitable relief." Id. (emphasis added). 5 GCA § 5480(c) broadens the Court's jurisdiction further, stating that"[i]n addition to other relief and remedies, the Superior Court shall have jurisdiction to grant injunctive relief in any action brought under Subsections (a), (b), or (c) of this Section." . In *Fleet Services*, the Supreme Court *sua sponte* raised an issue absent in any of the underlying protests and subsequently set aside a procurement based on an issue never raised before the agency. See Fleet Services, Inc. v. Dep't of Admin., Gov't. of Guam, 2006 Guam 6 ¶¶ 35-37. Therefore, the Supreme Court's holding in *Fleet Services* recognized and confirmed a broad grant of jurisdiction pursuant to 5 GCA § 5480.

Here, as DFS argues in their opposition, DFS' Complaint No. 1 is not simply an appeal from an administrative decision but a civil action in the Superior Court in which DFS is requesting relief from the alleged violations of law surrounding the events leading up to the award of the concession contract to Lotte. DFS' Complaint No. 1 initiates an action that alleges violations of different "statutes, regulations, and the terms and conditions of the solicitation." See 5 GCA § 5480(a). As previously established, this type of an appeal takes the form of *a civil action.* Id. (emphasis added); see also Town House, 2012 Guam 25 ¶¶ 28-29. Thus, because the Court has subject matter jurisdiction to review the Complaint as a civil action pursuant to

section 5480, and is not solely limited to the administrative decision, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on the allegations of success fees.

## II.    DFS' April 23, 2013, Protest was timely pursuant to 5 GCA § 5425(a).

Guam's Procurement Law requires that a procurement protest "shall be submitted in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto." 5 GCA § 5425(a). Consequently, any protests filed after the fourteen (14) day period will not be considered. See 2 GAR, Div. 4 § 9101(c)(1). Further, the Procurement Law allows "[a]ny actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection, solicitation or *award of a contract*" to file such protest. 5 GCA § 5425(a)(emphasis added).

AIAA argues that it is entitled to summary judgement as a matter of law as to DFS's Causes of Action alleging misconduct in connection with the Korea Trip, as well as DFS' Causes of Action regarding AIAA's use of random letter designations during the Board approval process, because DFS' protest regarding both the Korea Trip and the random letter designations was untimely. Specifically, AIAA argues that DFS indisputably knew of the material facts forming the bases for its protest more than 14 days before it submitted its protest on April 23, 2013, and therefore, failed to comply with the statutory time period set forth in 5 GCA § 5425(a). Thus, AIAA maintains that because DFS' protest regarding the Korea Trip and random letter designations was untimely, the Court does not have subject matter jurisdiction to hear those claims.

DFS, on the other hand, argues that genuine issues of material facts exist as to when DFS became an "aggrieved person" under 5 GCA § 5425(a), as well as when DFS knew or should have known of the underlying facts giving rise to its protest. Specifically, DFS maintains that it is protesting AIAA's finding that Lotte was the most qualified proposer and therefore, contends it could not have become an "aggrieved person" under 5 GCA § 5425(a) until April 12, 2013, when AIAA announced that Lotte was in fact the most qualified proposer. Thus, DFS

argues that its April 23, 2013 protest including both the Korea Trip allegations and random letter designation process was, in fact, timely.

This is an issue of first impression for this Court. The Court highlights that this is not a traditional procurement challenge. The heart of DFS' Motion for Summary Judgment No. 1 (First Protest) goes neither to the terms of the Procurement nor the evaluation process. See 5 GCA § 5425. Here, what is being challenged is AIAA, the agency's, conduct throughout the Procurement. Accordingly, the Court's analysis will be guided with these in mind.

A. DFS' claims regarding the Korea Trip

AIAA argues that it is entitled to summary judgment as a matter of law as to DFS' Third (3rd) through Eighth (8th), Fifteenth (15th), Sixteenth (16th), Ninth (9th) through Eleventh (11th), and Seventeenth (17th) through Nineteenth (19th) Causes of Action alleging misconduct in connection with the Korea Trip, because DFS' protest regarding the Korea Trip was untimely under 5 GCA § 5425(a). It is undisputed that DFS submitted a protest on April 23, 2013. In that protest, DFS alleged supporting facts concerning the purported misconduct that took place during the Korea Trip from September 26 to September 27, 2012. DFS also sent a letter to AIAA's Executive Manager, Charles Ada, on October 30, 2012 and April 11, 2012, regarding the same allegations. Nevertheless, AIAA contends that DFS had confirmation of all the material facts to form the bases of its protest no later than October 1, 2012, when DFS Vice President Tak Takano tape-recorded a conversation with former GVB employee Felixberto Reyes concerning the Korea Trip. Ada Decl., at ¶ 6, Ex. A, A-1. Therefore, AIAA maintains that DFS had until October 15, 2012, to submit a protest regarding the Korea Trip allegations. Since DFS did not submit its protest until April 23, 2013, AIAA argues that DFS' protest regarding the Korea Trip was untimely and thus, should not be considered by the Court.

On the other hand, DFS argues that it did not become an "aggrieved person" under 5 GCA § 5425(a) until April 12, 2013, when AIAA announced that Lotte was the most qualified proposer, making its April 23, 2013 protest timely. DFS contends that it was reasonable to believe that AIAA, upon hearing reports of the alleged misconduct during the Korea Trip, would initiate an investigation into Lotte's conduct and therefore, maintains that it did not suffer

actual harm nor were its legal rights impaired until AIAA actually announced the most qualified proposer. Further, DFS maintains that it is protesting the award to Lotte and thus, could not reasonably know of all the underlying facts giving rise to its protest until AIAA announced Lotte as the most qualified proposer on April 12, 2013.

Here, the Court must draw all reasonable inferences in favor of DFS. See Bank of Guam v. Flores, 2004 Guam 25 ¶ 7 ("In rendering a decision on a motion for summary judgment, the court must draw inferences and view the evidence in a light most favorable to the non-moving party.") (citations omitted). DFS has continually presented to the Court that they are *protesting the award* to Lotte and AIAA's finding that Lotte was the most qualified proposer, not the solicitation of the Procurement. See 5 GCA § 5425(a); see also Guam Imaging Consultants, Inc. v. Guam Mem. Hosp. Auth., 2004 Guam 15 ¶ 31 (holding that an agency's announcement of an award contract is an event entitled to a protest). It is undisputed that AIAA revealed Lotte as the most qualified proposer on Friday, April 12, 2013. However, it was not until Tuesday, April 16, 2013, that AIAA officially notified all the proposers of the results. Weiss Decl. (MSJ 1), Ex. 100. Thus, DFS, the Shilla Duty Free, and JR/Duty Free all had until Tuesday, April 30, 2013, to protest the award. Furthermore, AIAA Executive Manager, Charles Ada, and AIAA Supply Management Administrator, Franklin Taitano, clarified and confirmed that proposers had fourteen (14) calendar days after receiving notice of the results to file a protest. Id., Weiss Decl. (MSJ 1), Ex. 99.

DFS submitted its protest challenging the award to Lotte on April 23, 2013. Because the Court must draw all reasonable inferences in DFS' favor, the Court finds that DFS did not become an *aggrieved* party until April 16, 2013, when AIAA officially notified the proposers that Lotte was the most qualified proposer and therefore, had until April 30, 2013, to file a protest. Thus, because DFS filed its First Protest on April 23, 2013, the Court finds DFS' First Protest to be timely pursuant to 5 GCA § 5425(a) and DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on the Korea Trip allegations.

B. <u>DFS' claims regarding the random letter designation process</u>

Similarly, AIAA argues that it is entitled to summary judgment as to DFS' Ninth (9th), Tenth (10th), and Eleventh (11th) Causes of Actions, and possibly DFS' Seventeenth (17th), Eighteenth (18th), and Nineteenth (19th) Causes of Action regarding AIAA's use of random letter designations during the Board approval process because DFS' protest concerning those claims were also untimely under 5 GCA § 5425(a). Again, it is undisputed that DFS submitted a protest on April 23, 2013. In that protest, DFS alleged supporting facts concerning the use of random letter designations in selecting the most qualified proposer. AIAA asserts that DFS knew of the material facts concerning the random letter designations by March 28, 2013, when AIAA's management presented the recommendation at a public meeting attended by DFS, making its April 23, 2013 protest untimely. Again, DFS argues that there are genuine factual disputes as to when DFS became an "aggrieved person" under 5 GCA § 5425(a) and when DFS knew or should have known of the facts giving rise to the random letter designation claims. Further, DFS maintains that the 14-day deadline did not begin until April 12, 2013, when AIAA announced that Lotte was the most qualified proposer, thus making its April 23, 2013 protest timely.

Here, it is undisputed that DFS representatives attended the public meeting on March 28, 2013, when AIAA first announced the use of the random letter designation process in selecting the winning proposal. The facts before the Court also show that DFS sent an email to AIAA regarding the random letter designation process and that AIAA responded on April 5, 2013. Again, because DFS is *protesting the award* to Lotte, DFS contends that it could not have become an "aggrieved person" on March 28, 2013, because AIAA did not make its final decision based on the random letter designation process until April 12, 2013, when AIAA announced that Lotte was the most qualified proposer. AIAA, on the other hand, maintains that DFS had confirmation of all the material facts to form the bases of its protest as early as March 28, 2013, and no later than April 5, 2013, when DFS received AIAA's response to its inquiry regarding the random letter designation process.

As previously mentioned, the Court must draw all reasonable inferences in favor of DFS. See Bank of Guam v. Flores, 2004 Guam at ¶ 7. Since DFS is protesting the award to Lotte and AIAA's finding that Lotte was the most qualified proposer, the Court finds that DFS did not become an aggrieved party until April 16, 2013, when AIAA officially notified the proposers that Lotte was the most qualified proposer and therefore, had until April 30, 2013, to file a protest. Thus, because DFS filed its First Protest on April 23, 2013, the Court finds DFS' First Protest to be timely pursuant to 5 GCA § 5425(a) and DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on AIAA's use of random letter designations during the Board approval process.

### III. Automatic Stay

Guam's Procurement Law states that "[i]n the event of a timely protest under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void . . . ." 5 GCA § 5425(g). In Guam Imaging, Consultants, Inc., the Supreme Court made clear the timeliness requirement of the automatic stay provision, stating that "the Guam Procurement Law . . . contain[s] automatic stay provisions that are triggered by timely protests," and that "a protest . . . be both factually timely and pursued before the award has been made in order to trigger the automatic stay [provision]." Guam Imaging Consultants, Inc. v. Guam Mem. Hosp. Auth., 2004 Guam 15 ¶ 23. In other words, AIAA would have violated the automatic stay provision mandated by 5 GCA § 5425(g) if DFS' protest was both factually timely and filed before the award to Lotte was made. See Id. Further, the Supreme Court has also clarified the finality requirement under 5 GCA § 5425(g), holding that the automatic stay provision remains in effect during "commencement of a civil suit within the Superior Court and continues until *final resolution* of the action by the Superior Court." Teleguam Holdings, LLC v. Territory of Guam, 2015 Guam 13 ¶ 31 (emphasis added).

AIAA argues that it is entitled to summary judgment regarding DFS' First (1st) and Second (2nd) Causes of Action alleging that AIAA violated the automatic stay provisions of the Procurement Law by not staying the procurement process upon receiving DFS' First Protest and

continuing with the award to Lotte before a final resolution on that protest. See 5 GCA § 5425(g).

First, in regards to the automatic stay claims based on the allegations that Lotte paid "success fees" to consultants on the Procurement, AIAA asserts that because DFS never submitted a protest regarding those success fees, summary judgment is warranted because the automatic stay provision only applies when a protest has been actually filed. See Guam Imaging, 2004 Guam at ¶ 23. In contrast, DFS argues that its April 23, 2013, protest was submitted before the concession contract was entered into on May 18, 2013, and before the Board ratification on June 11, 2013. Thus, DFS argues that because AIAA continued with the award of the concession contract after DFS submitted its timely protest, AIAA failed to stay its proceedings in violation of 5 GCA § 5425(g). As determined above, the Court has subject matter jurisdiction to review DFS' Complaint No. 1, which contains the allegations concerning "success fees," as a civil action pursuant to 5 GCA § 5480, and the Court is not solely limited to the administrative decision. Nonetheless, the Court has also determined that DFS' First Protest was timely pursuant to 5 GCA § 5425(a) and made before the award of the concession contract to Lotte. Thus, because the Court finds no merit in AIAA's argument that the automatic stay provision does not apply to DFS' claims regarding success fees, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on DFS' automatic stay provision claims regarding "success fee" allegations.

Second, AIAA argues that DFS' automatic stay claims based on DFS' protests regarding both the Korea Trip and anonymous letter designations fail as a matter of law, because DFS' First Protest asserting those allegations was untimely under 5 GCA § 5425(a). Again, the Court has determined above that DFS' First Protest was timely. It is also undisputed that AIAA denied DFS' protest on May 17, 2013, that AIAA management and Lotte signed a concession contract on May 18, 2013, and that the Board ratified that contract on June 11, 2013. Therefore, because DFS' protest was both timely and made before the award of the concession contract to Lotte, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in

Complaint No. 1 insofar as they are based on DFS' automatic stay claims regarding the Korea Trip and the random letter designation process.

Further, AIAA also argues that DFS' automatic stay claims are moot because there is no pre-award status quo to maintain. However, because the Court finds that DFS' First Protest was both timely and made before the award of the concession contract to Lotte, the Court finds that DFS' automatic stay claims are not moot as AIAA alleges and therefore, the Court need not address that portion of AIAA's automatic stay argument.

Lastly, AIAA argues that because it denied DFS' First Protest on the bases of untimeliness, the automatic stay provision mandated by 5 GCA § 5425(g) did not apply. The Court disagrees. The Supreme Court made clear in *Teleguam* that the automatic stay provision remains in effect during "commencement of a civil suit within the Superior Court and continues until *final resolution* of the action by the Superior Court." Teleguam Holdings, LLC v. Territory of Guam, 2015 Guam 13 ¶ 31 (emphasis added); see also 5 GCA § 5425(g). In other words, the automatic stay is lifted and the agency may continue with the procurement only when there has been a complete adjudication of that protest, including actions resulting in the Superior Court and any subsequent appeals. Id. Therefore, an administrative agency's decision on a protest does not constitute a final resolution and the automatic stay requirement remains in effect until that protest is fully adjudicated. Id. Again, the Court finds that DFS' First Protest was timely pursuant to 5 GCA § 5425(a). AIAA denied DFS' protest on May 17, 2013, and DFS timely filed an appeal to the OPA on May 30, 2013. See 5 GCA § 5481(a) (Guam's Procurement Law requires that actions brought under § 5480(a) be initiated within fourteen (14) days after the receipt of a final administrative decision). As determined above, when the Public Auditor recused herself, the Court assumed jurisdiction pursuant to 5 GCA § 5480. Therefore, because this instant matter is ongoing before the Court and the dispute underlying DFS' First Protest remains unresolved, the automatic stay requirement prompted by DFS' First Protest still remains in effect to this date.

Under Teleguam, AIAA should have refrained from taking action until after the fifteen-day appeal period elapsed, after having made sure DFS did not file an appeal to the

OPA. Teleguam, 2015 Guam 3 ¶ 31. AIAA concluded for itself that the agency's denial gave finality to the First Protest. However, the conclusions reached by the agency are not final or conclusive on the Court. 5 GCA § 5703. Notwithstanding its duty to remain stayed, AIAA resumed its negotiations with Lotte on Saturday, May 18, 2013, and on the same day, reached an agreement. AIAA's actions appear to have frustrated DFS' due process rights under 5 GCA § 5425(e), which allows a protestant to appeal an agency's decision on a protest within fifteen (15) days after receipt of the notice of the decision. Thus, the Court finds those negotiations as well as any other procurement-related activities undertaken by AIAA following DFS' First Protest filed on April 23, 2013, violated the automatic stay provision mandated by Guam's Procurement Law. See 5 GCA § 5425(g).

## CONCLUSION

For the reasons set forth above, because the Court has subject matter jurisdiction to review the Complaint as a civil action pursuant to 5 GCA§ 5480, and is not solely limited to the administrative decision, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on the allegations of success fees.

For the reasons set forth above, because the Court finds DFS' April 23, 2013, protest to be timely pursuant to 5 GCA § 5425(a), the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on the Korea Trip allegations.

For the reasons set forth above, because the Court finds DFS' April 23, 2013, to be timely pursuant to 5 GCA § 5425(a), the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on AIAA's use of random letter designations during the Board approval process.

For the reasons set forth above, because the Court finds no merit in AIAA's argument that the automatic stay provision does not apply to DFS' claims regarding success fees, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in

Complaint No. 1 insofar as they are based on DFS' automatic stay provision claims regarding "success fee" allegations.

For the reasons set forth above, because DFS' protest was both timely and made before the award of the concession contract to Lotte, the Court DENIES AIAA's Motion for Summary Judgment as to those Causes of Action in Complaint No. 1 insofar as they are based on DFS' automatic stay claims regarding the Korea Trip and the random letter designation process.

Finally, because this instant matter is ongoing before the Court and the dispute underlying DFS' First Protest remains unresolved, the automatic stay requirement prompted by DFS' First Protest still remains in effect to this date. Thus, the Court finds the actions undertaken by AIAA following DFS' First Protest filed on April 23, 2013, violated the automatic stay provision mandated by Guam's Procurement Law.

\\\

\\\

\\\

IT IS SO ORDERED this _____ FEB 0 2 2018 _____.




**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
CIVIL, BSTM, CFJ
Capt
Date: 2/7/18 Time: 11
Jerimie K.C. James
Deputy Clerk, Superior Court of Guam